UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOBRINA RUSSELL,<br><br>                        Plaintiff,<br><br>v.<br><br>WYNDHAM VACATION RESORTS, INC., et al.,<br><br>                        Defendants. | Case No.:  22-cv-0880-L-DDL<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAYING CASE [ECF NO. 5]** |

In this action for elder abuse, misrepresentation, fraudulent inducement, promissory estoppel, and violation of California's vacation and time-share act, Defendants Wyndham Vacation Resorts, Inc., ("WVR") filed a motion to compel arbitration and stay court proceedings. Plaintiff filed an opposition, and Defendant replied. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Defendant's motion is granted.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Wyndham Vacation Resorts, Inc. ("Wyndham Vacation Resorts") develops, markets and sells membership interests in PTVO Owner's Association, Inc. ("PTVO"). Ownership in PTVO includes the right to participate in Club Wyndham Access Vacation Ownership Plan and the rights to use accommodations in all the resorts that are a part of

1

the club (collectively, WVR and PTVO will be referred to herein as the "Wyndham Defendants"). These vacation ownership or timeshare interests are measured in points that renew annually and can be redeemed to reserve accommodations. In California, the sale and marketing of timeshare interests is regulated.

Plaintiff Dobrina Russell ("Russell" or "Plaintiff"), completed a total of six timeshare purchases from Defendants between March 23, 2019 and May 28, 2021. Plaintiff made her first purchase at issue in an agreement for a timeshare interest on March 23, 2019, titled Security Agreement ("March 2019 Agreement"). (Orben Decl., Ex. 1.) The second timeshare purchase was made on February 3, 2020, titled Security Agreement ("February 2020 Agreement"). (Orben Decl., Ex. 2.) Plaintiff's third purchase was on November 28, 2020. (Compl. ¶ 10.) The agreement for this third timeshare purchase on November 28, 2020 is titled in part Purchase and Sale Agreement ("November 2020 Agreement"). (Orben Decl., Ex. 3.) As part of the third purchase, Plaintiff traded in her first two timeshare interests. The fourth timeshare purchase was made on February 22, 2021, titled Security Agreement ("February 2021 Agreement"). (Orben Decl., Ex. 4.) The fifth timeshare purchase was made on March 12, 2021, titled Security Agreement ("March 2021 Agreement"). (Orben Decl., Ex. 5.) The sixth timeshare purchase was made on May 28, 2021, titled Security Agreement ("May 2021 Agreement"). (Orben Decl., Ex. 6.)

In her Complaint, Plaintiff alleges that Defendants violated the Elder Abuse and Dependent Adult Civil Protection Act by persuading Russell, an elderly single woman from Bulgaria whose first language is not English, to take a loan against her retirement funds to purchase the timeshare interests. Each of Plaintiff's six timeshare purchase agreements contained a written arbitration provision. On March 9, 2022, Russell, via her attorney of record, filed a Demand for Arbitration against Defendants with AAA (Dec. Paschall ¶ 2) On April 4, 2022, AAA sent a letter to Russell's attorney and Wyndham informing them:

> Claimant has filed with us a demand for arbitration. We note that the arbitration clause provides for arbitration by the American Arbitration Association ("AAA").
>
> Prior to the filing of this arbitration, Wyndham Vacation Resorts, Inc. failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, which can be found on our web site, www.adr.org. Accordingly, we must decline to administer this claim and any other claims between Wyndham Vacation Resorts, Inc. and its consumers at this time. Please note that, for cases proceeding under the Consumer Rules, the AAA reviews the relevant arbitration agreement for material compliance with the Protocol and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute.
>
> We have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

(Paschall Decl., ¶ 4 [ECF No. 6-1]; Ex 3 [ECF No. 6-4.])

After receiving the letter from AAA, Plaintiff initiated this action on April 5, 2022, against the Wyndham Defendants in San Diego Superior Court Case No. 37-2022-00012698-CU-BT-CTL. (Paschall Dec. at ¶ 5). On June 16, 2022, Defendants filed a Notice of Removal to this Court.

Plaintiff alleges claims against the Wyndham Defendants for: (1) Financial Elder Abuse;(2) Violation of California Business and Professional Code § 11245; (3) Intentional Misrepresentation and Fraud in the Inducement; (4) Concealment; (5) Negligent Misrepresentation (Against Defendants); (6) Promissory Estoppel; (7) Accounting; and (8) Violation of California Business and Professional Code § 17200. Plaintiff also seeks recession of the timeshare agreements and injunctive relief, along with punitive damages. (Compl. ¶ 76, 12:25-26.)

On June 23, 2022, Defendants filed the present Motion to Compel Arbitration and Stay Court Proceedings. [ECF No. 5.] On July 11, 2022, Plaintiffs filed a Response in Opposition. [ECF No. 6.] On July 18, 2022, Defendants filed a Reply.

## II.   LEGAL STANDARD

Arbitration clauses are governed by the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* ("FAA") and California contract law. Under the Federal Arbitration Act ("FAA"):

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The party seeking to compel arbitration under the FAA has the burden to show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Property Mgmt.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "The FAA 'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed'." *Kilgore v. KeyBank N.A.,* 718 F.3d 1052, 1058 (9th Cir. 2013) (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "As federal substantive law, the FAA preempts contrary state law." *Mortensen v. Bresnan Comm'cns, LLC,* 722 F.3d 1151, 1158 (9th Cir. 2013). The burden of proving that the arbitration agreement cannot be enforced is on the party resisting arbitration. *Green Tree Fin. Corp. - Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## III.   DISCUSSION

As a preliminary matter, Plaintiff does not contest the validity of the arbitration clauses at issue, or that they encompasses the dispute at hand. Instead, Plaintiff contends that the arbitration clauses are unenforceable because Defendants breached or waived them by failing to comply with AAA's Consumer Due Process Protocol and the Consumer Arbitration Rules, "including the Costs of Arbitration," as indicated in the letter from AAA. (Oppo. at 4.) This failure to comply is also a material breach of the

arbitration agreements pursuant to Cal. Civ. Proc.Code. § 1281.97(a)(1) and (2), according to Plaintiff." (*Id*. at 7). The Court addresses each argument in turn.

### A. Breach of Arbitration Agreements

According to Plaintiff, Defendants cannot compel arbitration because the letter from AAA shows that Defendants are in material breach of the arbitration agreement for failing to comply with AAA's policies regarding consumer claims, "including the costs of arbitration." (Oppo. at 4). Plaintiff cites *Brown v. Dillards, Inc*., 430 F.3d 1004, 1010-12 (9th Cir. 2005) in support of her contention that Defendants failed to engage in arbitration. (*Id*.)

In response, Defendants claim that they have not acted, or failed to act, in any way that constitutes a failure to arbitrate, but instead they have made attempts to pursue an AAA arbitration forum. (Reply at 8). For this reason, *Brown* is inapplicable to the present case. (*Id*.) Moreover, Defendant contends that the AAA has "issued inconsistent and confusing administrative letters in response to demands for arbitration brought against WVR, declining to administer some arbitrations while agreeing to administer others, even where the same arbitration provision is at issue." (*Id*. at 2.) Defendants claim they have attempted to determine the nature of the purported failure to comply but AAA's responses have not given clear guidance to remedy the matter. However, Defendants claim that AAA has typically agreed to administer matters, even when they previously declined to administer them, if a court orders the parties to arbitration. (*Id*. at 2).

"A bedrock principle of California contract law is that "[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed."" *Brown*, 430 F.3d at 1010. The FAA provides that if a party to an arbitration agreement fails to engage in arbitration, a district court may issue an order compelling arbitration. 9 U.S.C § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration

may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.")

      Unlike the defendants in *Brown*, Defendants have not refused to arbitrate, but instead have actively attempted to resolve the issue with AAA. In *Brown*, the department store defendant required arbitration of employee disputes, but defendant Dillard's refused to arbitrate Plaintiff's termination claims with the AAA. 430 F.3d at 1005-06. The AAA attempted to contact defendant Dillard's for payment of the fee, but defendant did not pay. *Id*. at 1008-09. When plaintiff Brown was finally notified that defendant had refused to engage in arbitration, she filed suit in state court, and Dillard's removed to federal court. *Id*. at 1009. The district court denied Dillard's motion to compel arbitration, finding that Dillard's "breached its agreement with Brown by refusing to participate in the arbitration proceedings Brown initiated," therefore, "[h]aving breached the agreement, Dillard's cannot now enforce it." *Id*. at 1010. No such breach has occurred here as Defendants have not refused to participate in the arbitration proceedings.

      Moreover, Defendants have shown that the AAA has issued similar letters declining to administer claims in other matters but has proceeded to administer the arbitration when ordered by a court to do so. For instance, the AAA issued an almost identical form letter in the Moore v. Wyndham Vacation Resorts matter. As in the present case, the letter from AAA in the Moore case stated in part:

> Prior to the filing of this arbitration, Wyndham Vacation Resorts, Inc. failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, which can be found on our web site, www.adr.org. Accordingly, we must decline to administer this claim and any other claims between Wyndham Vacation Resorts, Inc. and its consumers at this time.

(Def. Reply Ex. 4 [ECF No. 7-5.]) The AAA closed that case in error but reopened it and sent the plaintiffs a letter stating it was proceeding with the arbitration in light of a court

order to do so. (Walker Dec. at ¶ 9; Exs. 4, 5). The letter also included an invoice to WVR for its portion of the arbitration fees. (*Id*.)

Although Plaintiff claims that Defendants breached the arbitration agreement by failing to pay the costs of arbitration, it is not clear what provisions of the AAA policies were violated based on the letter. As noted above, the letter states that the AAA is declining to administer the claim because Defendants "failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration." (See Def. Ex. 3 [ECF No. 6-4] (emphasis added)). The phrase "including the Costs of Arbitration" could be interpreted to mean that Defendants' failure to "comply with the AAA's policies regarding consumer claims" "including [failure to comply] with the Costs of Arbitration [provision]", means they did not pay the costs of arbitration, which appears to be Plaintiff's interpretation. However, the phrase could also be interpreted to mean that AAA's policies, including the Costs of Arbitration provision, are simply set forth in the Consumer Due Process Protocol, and the Consumer Arbitration Rules. Therefore, it is not clear from the face of the document that Defendants failed to pay the costs of arbitration.

While the AAA letter in this case does not specify how Defendants failed to comply with the regulations, the letter issued in the Moore case may shed light on this issue. It noted that the arbitration provision had a "substantial deviation from the Consumer Rules and/or Protocol" because it violated Principle 7: Reasonably Convenient Location and Principle 14: Arbitral Remedies. (*Id*. Ex. 3).  Defendants claim that the AAA has asked them to waive one of both of the provisions but has ultimately agreed to administer the arbitrations in most instances. Counsel for Defendants states that attempts were made in 2019 and 2020 to seek clarification and guidance from AAA regarding the language in the arbitration provision, but those efforts have been unsuccessful. (J. Walker Dec. ¶¶ 4-6 [ECF 7-1.])

In light of Defendants willingness to move forward with arbitration, the ambiguity of the AAA letter, and the AAA's course of conduct in proceeding to administer arbitration in other matters despite similar issues of noncompliance, the Court finds that Defendants have not breached the arbitration agreement.

### B. Waiver of Arbitration Agreements

Plaintiff also argues that Defendants have waived their right to arbitration because (1) they knew about the arbitration clauses, yet (2) took acts inconsistent with that right by failing to comply with AAA's policies regarding consumer claims, and (3) Russell will be significantly prejudiced by the delay and costs if she is required to arbitrate her claims. citing *United States v. Park Place Assoc., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). (Oppo. at 4, 6).

In response, Defendants argue that Plaintiff cannot satisfy the second prong of the *Park Place* standard because Defendants have not taken any acts inconsistent with the rights to arbitrate but instead have consistently sought to arbitrate this and other matters. (Reply at 10). In addition, Defendants contend that Plaintiffs will experience no prejudice because the case is in the early stages, no discovery has taken place, and Plaintiffs will experience more costs and delay if the case goes to trial rather than an arbitration for which Defendants will pay most of the costs. (*Id.*)

"The right to arbitration, like any other contract right, can be waived." *Park Place,* 563 F.3d at 921. "Although a court may deny a petition to compel arbitration on the ground of waiver (§ 1281.2, subd. (a)), waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." *Saint Agnes Med.Ctr. v. PacifiCare of Calif.*, 31 Cal.4th 1187, 1195 (2003). To prove waiver of the right to arbitration a party must demonstrate "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration." *Park Place*, 563 F.3d at 921.

The parties acknowledge an existing right to compel arbitration, therefore the first prong of the *Park Place* test is satisfied.

As to the second element, there is no indication that Defendants have taken any actions that are inconsistent with the contractual right to arbitration. As noted above, Defendants have requested guidance from the AAA with regard to any failure to comply with the Consumer Rules or Protocol which are not acts inconsistent with the right to arbitration. Instead, Defendants actions in this and other matters indicates a willingness to arbitrate. For this reason, the second element of the *Park Place* test is not satisfied.

In addition, Plaintiff cannot satisfy the third element of prejudice. There is no doubt that Plaintiff was stymied in her efforts to proceed with arbitration which has caused delay, and that as a result she paid the filing fee associated with the Complaint, but this is insufficient to demonstrate prejudice. *Hoover v. American Income Life Ins. Co.*, 206 Cal.App.4th 1193, 1205 (2012) ("[P]rejudice typically is found only where the petitioning party has unreasonably delayed seeking arbitration or substantially impaired an opponent's ability to use the benefits and efficiencies of arbitration. [Citations.] Prejudice is not found where the party opposing arbitration shows only that it incurred court costs and legal expenses in responding to an opponent's pleadings and motions.")

For these reasons, the Court finds that Defendants have not waived the right to arbitrate.

*C. California Civil Procedure Code § 1281.97.*

Plaintiff argues that Defendants failure to comply with AAA's consumer policies and protocols is tantamount to violating California Civil Procedure Code § 1281.97 which states that the drafting party of an arbitration agreement waives the right to compel arbitration if it fails to pay fees and costs required to initiate an arbitration agreement within 30 days of the due date. (Oppo. at 6). According to Plaintiff, the AAA letter indicates that Defendants failed to pay the costs of arbitration.

Defendants claim that they have not waived their right to arbitration under section 1281.97 because the AAA denial letter was issued on April 4, 2022, before the AAA invoiced Defendants for any fees or costs, therefore, no payment obligation ever became due. (Reply at 11).

Under California Civil Procedure Code § 1281.97:

(a)(1) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.

(2) After an employee or consumer meets the filing requirements necessary to initiate an arbitration, the arbitration provider shall immediately provide an invoice for any fees and costs required before the arbitration can proceed to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day. To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt.

Cal.Civ.P.Code § 1281.97.

Here, as indicated above, it is not clear from the letter whether the failure to comply with AAA Protocols and Rules included a failure to pay costs of arbitration. In fact, the AAA denied Plaintiff's request to arbitrate before Defendants were required to pay any fees and costs. The letter from the AAA declining to administer the claim was issued prior to any invoice being sent to Defendants. (Pl. Ex. 3 [ECF No. 6-]; Walker Dec. ¶ 17). Therefore, Defendants did not violate section 1281.97 and have not waived the right to compel arbitration.

//

//

//

//

IV.    Conclusion and Order

In light of the above, Defendant's motion to compel arbitration and stay the present matter is **GRANTED**. The parties shall file a joint status report upon entry of the arbitration award, or on **March 30, 2022**, whichever first occurs. Failure to timely comply with this provision will result in dismissal pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: January 9, 2023

Hon. M. James Lorenz
United States District Judge

11

22-cv-0880-L-DDL